Donald S. **PARKINSON**, Plaintiff,

v.

Glenn **GOORD**, et al., Defendants.

No. 98–CV–6408L.

United States District Court, W.D. New York.

Sept. 28, 2000.

Donald S. Parkinson, Sonyea, NY, plaintiff pro se.

Emil J. Bove, Office of New York State, Attorney General, Rochester, NY, for Glen Goord, Commissioner, NYS Dept. of Corrections, defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

**Procedural Background**

Plaintiff, Donald Parkinson, appearing *pro se* and an inmate in the custody of the New York State Department of Correc-

tional Services ("DOCS"), commenced this action under 42 U.S.C. § 1983. Plaintiff initially named a number of individuals at Collins Correctional Facility ("Collins") as defendants: Collins Superintendent Victor Herbert[1], Collins senior corrections counselor Thomas Hicks, Collins Health Services Director Dr. John Cetin, and DOCS Commissioner Glenn Goord. Plaintiff alleges that all defendants violated his constitutional rights under the Eighth Amendment.

By decision and order entered January 26, 1999, plaintiff's section 1983 claims against defendant Goord were dismissed with prejudice, and the Court deemed certain of plaintiff's claims to arise under the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12132. (Dkt.# 5). By decision and order entered August 17, 1999, plaintiff was permitted to amend his complaint to add as defendants Collins Correction Lieutenant Gregory Sarra, Collins Deputy Superintendent for Administration Thomas Mudra, Collins Deputy Superintendent for Security Patricia O'Connor[2], Collins Deputy Superintendent for Program Services Richard Becker, and John & Jane Doe of Central Office Health Services. (Dkt.# 24).

The relief requested in the complaint includes compensatory and punitive damages, a restraining order protecting him from retaliation, and injunctive relief. Plaintiff has requested relief against all defendants in both their individual and their official capacities. (Dkt.# 9). Presently before the Court are plaintiff's and defendants' motions for summary judgment.

## Factual Background

Parkinson was convicted of two counts of attempted assault upon a police officer and reckless endangerment in the first degree for shooting a rifle at two New York State troopers. Parkinson was briefly incarcerated at Collins from June 25, 1998 through November 17, 1998. Plain-

tiff is an amputee with only one leg. He has raised several claims that relate to his medical treatment and housing during his short tenure at Collins. First, he alleges that he repeatedly requested a prosthetic leg, either his old one or a new one, but that when he filed his complaint he was still without a prosthesis. Plaintiff wrote letters to defendants Dr. Cetin and Counselor Hicks requesting the prosthesis. Plaintiff also alleges that his medical needs as an amputee have not been met. For example, he is authorized to receive an additional pillow to raise the remainder of his amputated limb to decrease swelling, but plaintiff claims that he was given neither a pillow for his head nor one for his limb.

The lack of a prosthetic leg resulted in further difficulties. At the time he filed his complaint, he was still housed on an upper floor in an older building at Collins that he claims is not designed to accommodate his needs. Defendants Hicks and Deputy Superintendent Herbert acknowledged plaintiff's requests for transfer and sought to have plaintiff transferred to a facility with ground-floor housing and programs, but were unsuccessful in obtaining approvals for such transfer requests. When he was at Collins, plaintiff claimed he did not have access to a handicapped-equipped bathroom, toilet or shower. He alleges that he had to shower on one leg without any handgrips, bars, or anti-skid mats to provide stability. Plaintiff also claimed that it was very difficult for him to move around the facility on crutches, in that he had to regularly negotiate stairs that were covered with debris, and use floors which were often wet and slippery. These conditions caused him to fall several times, and he hurt his wrist, arm and back and broke his crutches during one of his falls. He further claims that he experienced back pain from this fall, and com-

---

1. Currently, Mr. Herbert is Superintendent of Attica Correctional Facility. Herbert Affidavit ("Aff."), ¶ 1.

2. Ms. O'Connor is now retired. O'Connor Aff., ¶ 2.

plains that the prescribed medication was not alleviating his pain.

On August 31, 1998, plaintiff began working in the Collins "storehouse" but within hours he was removed from the job. On or about August 31, 1998 and September 8, 1998, Parkinson filed grievances about this removal with the Inmate Grievance Resolution Committee ("IGRC"). The IGRC recommended that Parkinson be allowed to return to the storehouse. Becker Aff., Ex. H. Superintendent Herbert disagreed with the IGRC's decision, and stated that Parkinson would not be considered for work until after he received his prosthetic limb. *Id.* The Central Office Review Committee ("CORC") affirmed Superintendent Herbert's response on November 10, 1998. *Id.* On November 17, 1998, plaintiff was transferred from Collins for disciplinary reasons.

This is one of three suits involving similar allegations that plaintiff has commenced in federal court. Plaintiff filed his first lawsuit against a number of Columbia County officials (including a County Court judge, the local district and assistant district attorneys, and the local sheriff), the New York State Attorney General, and DOCS. *Parkinson v. Fort,* 98–CV–1432 (N.D.N.Y.). Plaintiff's stipulation discontinuing that action was filed November 19, 1998. Another lawsuit, filed November 19, 1998, is currently pending in the Northern District of New York, again including DOCS as one of the defendants. *Parkinson v. New York State Department of Correctional Services,* 98–CV–1788 (N.D.N.Y.) ("Parkinson's Northern District action").

## Discussion

### I General Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *McKelvie v. Cooper,* 190 F.3d 58, 61 (2d Cir.1999). Where, as here, the plaintiff is proceeding *pro se,* the court will liberally construe the plaintiff's pleadings, and "interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citing *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment. *Carbonell v. Goord,* 99–CV–3208, 2000 WL 760751, *5 (S.D.N.Y. June 13, 2000).[3]

### II The Eighth Amendment Claim

Plaintiff's claims arise, in part, under the Eighth Amendment, which proscribes "cruel and unusual punishment." Defendants argue that plaintiff's Eighth Amendment claims should be dismissed because plaintiff has not exhausted his available administrative remedies. Plaintiff does not respond to this argument.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.A. § 1997e *et seq.,* an inmate is required to exhaust all available administrative remedies before bringing suit on a federal claim. Specifically, section 1997e(a) provides:

No action shall be brought with respect to prison conditions under section ... 1983 [of this title], or any other Federal

---

**3.** Plaintiff has not filed a statement of material facts as required by Rule 56 of this Court's Local Rules of Civil Procedure. Failure to comply with Local Rule 56 allows the Court to deem admitted all material facts set forth in defendants' Rule 56 statement. Moreover, plaintiff's motion may be denied for having failed to file such a statement. Indeed, a similar motion by plaintiff in his Northern District case was denied for his failure to comply with a similar local rule. Notwithstanding these omissions, I have nonetheless viewed all ambiguities and inferences that reasonably may be drawn from the facts in the light most favorable to plaintiff.

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see Snider v. Melindez,* 199 F.3d 108, 109 (2d Cir.1999). As the Second Circuit recently stated: "Section 803(d) of the PLRA added teeth to the 1997e(a) exhaustion provision, affirmatively requiring prisoners to exhaust administrative remedies, whether federal or state, before bringing any federal claims 'with respect to prison conditions.'" *Nussle v. Willette,* 99–0387, 224 F.3d 95, 2000 WL 1199957, *3 (2d Cir. August 24, 2000). Although the pre-PLRA section 1997e(a) provided a more limited exhaustion requirement, granting district courts discretion whether to require a prisoner to exhaust administrative remedies, the amended statute clearly requires prisoners first to pursue challenges to the conditions of their confinement though the highest level of the available administrative procedures. In so doing, Congress intended section 1997e(a) to "curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court." *Alexander v. Hawk,* 159 F.3d 1321, 1324, *reh'g en banc denied,* 172 F.3d 884 (11th Cir.1999) (citing 141 Cong.Rec.H. 472–06, *H1480 (daily ed. Feb. 9, 1995)). Consequently, the PLRA mandates that plaintiff exhaust the available administrative remedies before filing his section 1983 claim in this Court. District courts in this circuit have similarly held that claims of deliberate indifference to medical needs, like those made here, are subject to the PLRA's exhaustion requirement. *See Hernandez v. Greiner,* 99–CV–4601, 2000 WL 520639, *1–2 (S.D.N.Y. May 1, 2000); *Parkinson v. New York State Department of Correctional Services,* 98–CV–1788 (N.D.N.Y. March 16, 2000) (involving same plaintiff, and holding that "[t]he PLRA's exhaustion requirement applies ... since a plain meaning of the phrase 'prison conditions' encompasses medical treatment"); *Cruz v. Jordan,* 80 F.Supp.2d 109, 113 (S.D.N.Y.

1999) (holding that deliberate indifference claim is action "with respect to prison conditions" and therefore subject to PLRA's exhaustion requirement, notwithstanding unavailability of monetary damages in prison's administrative proceedings); *Vasquez v. Artuz,* 1999 WL 440631, *5–7 (S.D.N.Y. June 28, 1999); *Wright v. Dee,* 54 F.Supp.2d 199, 204–06 (S.D.N.Y.1999).

All New York correctional facilities, like Collins, are to maintain an Inmate Grievance Program ("IGP"), designed to provide inmates with an "orderly, fair, simple and expeditious method of resolving grievances." 7 N.Y.C.R.R. §§ 701.1 *et seq.; see Cruz,* 80 F.Supp.2d at 117. Under the IGP's three-step review process, an inmate's grievance is first investigated and reviewed by a committee of inmates and DOCS employees; the committee's decision is then subject to review by the correction facility's superintendent; and finally, a prisoner may appeal the superintendent's decision to the CORC for a final administrative determination. 7 N.Y.C.R.R. § 701.7. Only upon such a final determination is an inmate deemed to have exhausted his administrative remedies. *See Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 887–889 (S.D.N.Y.1998).

■ In response to the instant motion, plaintiff utterly fails to present any evidence or even any allegation that he has exhausted his administrative remedies with respect to his Eighth Amendment claims. Indeed, nothing in the record supports any conclusion on this point other than that plaintiff never filed any grievance regarding these claims. It is clear, therefore, that plaintiff has failed to exhaust his remedies. Although he filed two inmate grievances in 1998, neither alleges anything other than that he was discriminated against with respect to his removal from the storehouse position because of his disability. As such, those grievances do not satisfy the exhaustion requirement with respect to plaintiff's Eighth Amendment claims.

■ The fact that the administrative procedures at DOCS do not provide for monetary relief does not relieve plaintiff of his obligation to exhaust his administrative remedies in accordance with the PLRA. It is true that there is a split in the case law regarding whether a plaintiff must exhaust administrative remedies where the plaintiff has requested only monetary relief which is not available under the administrative procedures. A number of courts have determined that the so-called inadequacy exception does not survive the mandatory exhaustion requirement of the PLRA, *see Wendell v. Asher,* 162 F.3d 887, 890–91 (5th Cir.1998), while a number of courts have determined that it does, *see Garrett v. Hawk,* 127 F.3d 1263, 1266 (10th Cir. 1997). The Second Circuit has yet to issue a definitive ruling on this issue. *See Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1999) (declining to resolve this "complex legal issue[ ]"); *see also Nussle,* 224 F.3d 95, (holding, as a matter of first impression, that excessive force claims are not encompassed within section 1997e(a)'s exhaustion requirement, but not ruling on whether the exhaustion requirement applies to claims for monetary damages alone); *Tolliver v. Wilson,* 99–CV–9555, 2000 WL 1154311, *3 (S.D.N.Y. August 14, 2000) ("the Second Circuit has not yet decided whether the PLRA requires a prisoner seeking monetary damages to exhaust . . .", but holding that plaintiff not relieved from exhaustion requirement).

Despite the existence of this conflict, it is immaterial here. Plaintiff requests injunctive relief and a restraining order in addition to monetary damages. Even prior to the amendment to the PLRA, courts held that prisoners seeking injunctive and declaratory relief in addition to monetary damages must exhaust available administrative procedures even if those procedures do not provide for monetary damages. *See McCarthy v. Madigan,* 503 U.S. 140, 153 n. 5, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *Arvie v. Stalder,* 53 F.3d 702, 706 (5th Cir.1995); *Irwin v. Hawk,* 40 F.3d 347, 348–49 (11th Cir.), *cert. denied,* 516 U.S. 835, 116 S.Ct. 112, 133 L.Ed.2d 64

(1995); *Young v. Quinlan,* 960 F.2d 351, 356 n. 8 (3d Cir.1992); *see also Newman v. Holder,* 101 F.Supp.2d 103, 106 (E.D.N.Y. 2000) (acknowledging split of authority, but adopting Seventh Circuit rule that "a prisoner cannot avoid section 1997e(a) just by limiting his demand in court to money"). Moreover, because plaintiff seeks more than merely monetary damages, DOCS could possibly have provided plaintiff with at least part of the relief he requested through the administrative process. *See Murphy v. Magnusson,* 98–CV–439, 1999 WL 615895, *2 (D.Me. July 27, 1999). Based upon the foregoing, plaintiff's Eighth Amendment claims must be dismissed.

■ Even if I were to reach the merits, I would not find any Eighth Amendment liability. In order to establish that prison medical treatment was so inadequate as to amount to cruel and unusual treatment, a plaintiff must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The standard of deliberate indifference includes both objective and subjective components. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.) (citations omitted), *cert. denied,* .513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Ramos v. O'Connell,* 28 F.Supp.2d 796, 802 (W.D.N.Y.1998). Second, with respect to the subjective component, the defendant "must act with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to an inmate's health and safety. *Rangolan v. County of Nassau,* 217 F.3d 77, 79 (2d Cir.2000). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The Second Circuit has stated that a medical need is "serious" for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway*, 37 F.3d at 66). Among the relevant factors are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992)).

With respect to the second prong of this claim, *i.e.*, the culpability of the defendants' conduct, courts give prison officials broad discretion in determining the type and extent of medical treatment given to inmates. *Thomas v. Pate*, 493 F.2d 151, 157 (7th Cir.1974), *cert. denied*, 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975). Therefore, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. *Wandell v. Koenigsmann*, 99–CV–8652, 2000 WL 1036030 *3 (S.D.N.Y. July 27, 2000). Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Id.* (citation omitted); *accord Rosales v. Coughlin*, 10 F.Supp.2d 261, 264 (W.D.N.Y.1998). Only if the malpractice rises to the level of "criminal recklessness" will the defendant be found liable. *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998). In order to avoid dismissal, plaintiff must allege conduct that "shocks the conscience." *Wandell*, 2000 WL 1036030 at *3.

Applying these standards to the case at bar, it is clear the plaintiff's claims must be dismissed. Even when liberally construing the complaint in the light most favorable to plaintiff, his complaint does not state a claim of deliberate indifference.

In the case at bar, plaintiff has not even alleged that he had a serious medical need for any particular treatment. Even giving plaintiff the benefit of the doubt and assuming that there was some serious medical need, it remains clear that defendants are entitled to summary judgment due to the lack of evidence to support the second element of plaintiff's claim, *i.e.*, that defendants acted with sufficiently culpable states of mind.

Contrary to plaintiff's suggestion that his general needs were ignored with respect to plaintiff's requests for a prosthetic limb, the record clearly establishes that on June 26, 1998, the day after plaintiff arrived at Collins, a Collins physician requested a consultation at Tonawanda Limb and Brace, Inc. ("Tonawanda Limb") for a prosthesis for plaintiff. Defendants' Statement of Facts, ¶ 38, Dkt. # 44; Affidavit of Joseph Tan, M.D., ¶ 8, Dkt. # 57. It is also undisputed that on five separate occasions between August 6, 1998 and November 4, 1998, DOCS transported plaintiff to Tonawanda Limb for various fittings and adjustments on the prosthesis that was being fabricated for him. Defendants' Statement of Facts, ¶ 32, Dkt. # 44. Moreover, plaintiff admits that he received his new prosthetic leg, presumably at no charge to him, as early as October 9, 1998.

Regarding plaintiff's claim that defendants refused to transfer him to a facility that accommodated handicapped individuals, the record further establishes that transfer requests were made by DOCS personnel on plaintiff's behalf as early as July 1, 1998, less than one week after plaintiff arrived at Collins. Affidavit of Thomas Hicks, ¶ 5, Dkt. # 50. However, these early transfer requests were denied because a transfer at that time would have interfered with the preparation and delivery of the prosthesis that had already been requested for plaintiff. *Id.*, ¶ 9; Defendants' Statement of Facts, ¶¶ 85–86, 89–90, Dkt. # 44. Ultimately, plaintiff was transferred, albeit for other reasons, within a little more than a month of his receipt of

the new prosthesis and less than two weeks after plaintiff's last visit to Tonawanda Limb.

As to plaintiff's allegations that he was required to travel distances, up and down stairs, to attend meals and programs, defendants assert that plaintiff was given the option but elected not to accept housing in the Collins infirmary, which is located on the same level as the mess hall and several programs. Tan Aff., ¶¶ 5–6; Affidavit of Cathy Day, ¶¶ 5, 8, Dkt. # 54. It appears that plaintiff denies that he was offered this choice, although even that is unclear.[4] What is clear, however, is that none of these facts suggest that any defendants acted with a sufficiently culpable state of mind that is necessary to establish an Eighth Amendment violation.

■ Similarly, with respect to plaintiff's claim that defendants Mudra and Herbert were personally involved with, and deliberately indifferent to his medical need for safety railings in the shower, there is simply no evidence that they were deliberately indifferent to his condition, or that defendants had the requisite culpable state of mind and wanton intent to inflict pain. My review of the record leads me to the determination that there is very limited personal involvement with respect to many of the defendants named this action. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). There are several ways in which a supervisory defendant may be considered personally involved in such a deprivation. First, "[t]he defendant may have directly participated in the infraction." *Williams*

*v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). Second, "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong." *Id.* Third, a supervisory official may have "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Id.* Fourth a supervisory official who "was grossly negligent in managing subordinates who caused the unlawful condition or event" may be held personally liable. *Id.* at 323–24; *see also Doyle v. Coombe*, 159 F.3d 1346 (2d Cir.1998).[5] Finally, "supervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." *Wright*, 21 F.3d at 501 (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir.1983)).

At an Inmate Liaison Committee meeting on September 25, 1998, Herbert denied what appears to have been a general inmate request for safety rails in the showers. Notes from the meeting, however, reflect that benches would be made available if they were not already present. While Herbert's decision seems to address the entire population at Collins, plaintiff offers no evidence suggesting that he personally requested any assistance of Herbert to accommodate his specific condition. Herbert's lack of personal involvement is, in itself, sufficient grounds in which to grant summary judgment in his favor.

The Southern District of New York dealt with a similar case involving an inmate amputee who alleged Eighth Amendment violations against individuals at Sing

---

4. On this issue, plaintiff cryptically states: "Contrary to Defendants [*sic* ] statement, that I was offered the opportunity to be housed in the infirmiry [*sic* ] at Collins Correctional Facility. [*sic* ] I never signed any waivers, nor do I recall ever being offered same." Plaintiff's Aff., ¶ 7, Dkt. # 60. The fact that he did not sign or was not offered a "waiver" is irrelevant.

5. *Doyle* and several of the other cases cited in this Decision and Order are unreported cases, and as such are not to be cited as precedential authority pursuant to the rules of their respective circuits. They are cited herein not as binding precedent, however, but for the logic and persuasiveness of their reasoning.

Sing Correctional Facility ("Sing Sing") for failing to provide him with accessible toilet and shower facilities. *Rivera v. Dyett,* 88–CV–4707, 90–CV–3783, 1994 WL 116025 (S.D.N.Y. March 28, 1994). Although plaintiff in *Rivera* alleged injuries due to the inaccessibility of the showers at Sing Sing, the court held that "failure to provide accessible toilet and shower facilities did not deprive [plaintiff] of adequate medical care in violation of his Eighth Amendment rights." *Id.* at *9. Similarly, failure to provide shower safety railings at Collins did not deprive Parkinson of adequate medical care, nor did it violate his Eighth Amendment rights.

Plaintiff presents no evidence or allegations to suggest that defendants Cetin, Becker, Hicks, Sarra, or O'Connor were deliberately indifferent to his medical condition or that defendants Becker, Hicks, Sarra, or O'Connor were personally involved with his medical treatment.

■ In addition, I must also consider whether this Court lacks jurisdiction by reason of mootness. In order for a federal court to retain jurisdiction over a case, an actual controversy must exist "at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk,* 422 U.S. 395, 402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (citations omitted). A case is deemed moot where the problem sought to be remedied has ceased, and where there is "no reasonable expectation that the wrong will be repeated." *Id.* (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). It is settled in this circuit that "a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996). Since plaintiff was transferred from Collins in November 1998—long before the instant motions were filed—plaintiff's requests for a restraining order and injunctive relief are moot.

For these reasons, plaintiff's Eighth Amendment claims must be dismissed.

## III The ADA Claim

Although plaintiff did not specifically reference an ADA claim in his complaint, in broadly construing his claims, the Court has deemed him to raise an ADA claim. (Dkt.# 5). With respect to these motions, plaintiff maintains that defendants violated both Title I and Title II of the ADA. Title I of the ADA prohibits discrimination in employment. Title II, on the other hand, provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that Title II extends to prisons, *see Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998), but has not addressed whether Title I also extends to prisons.

■ In any event, defendants argue that, like plaintiff's Eighth Amendment claims, any ADA claims must be dismissed because plaintiff failed to exhaust his administrative remedies. I disagree. Neither Title I nor Title II of the ADA requires a complainant to exhaust administrative remedies prior to filing suit. *See Shariff v. Artuz,* 99–CV–0321, 2000 WL 1219381, *3 (S.D.N.Y. Aug.28, 2000); *see also* 28 C.F.R. § 35.172, App. A ("The [ADA] requires the Department of Justice to establish administrative procedures for resolution of complaints, but does not require complainants to exhaust these administrative remedies.... Because the [ADA] does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time"); *Nucifora v. Bridgeport Bd. of Educ.,* 99–CV–00079, 2000 WL 194693, *3 (D.Conn. Feb.9, 2000) ("no exhaustion of administrative remedies is required pursuant to Title II of the ADA") (citing 28 C.F.R. § 35.172(b)); *Noland v. Wheatley,* 835 F.Supp. 476, 482–83 (N.D.Ind.1993) (wheelchair-bound inmate not required to

exhaust administrative remedies for Title II claim); *Finley v. Giacobbe,* 827 F.Supp. 215, 219 n. 3 (S.D.N.Y.1993) (Title II "adopts procedures set forth in § 505 of the Rehabilitation Act" not Title VII and therefore does not require exhaustion); *see also Bogovich v. Sandoval,* 189 F.3d 999, 1002 (9th Cir.1999) ("[t]here is no exhaustion requirement for claims brought under Title II of the ADA"). Moreover, plaintiff did exhaust his administrative remedies at least with respect to his removal from the storehouse position. While plaintiff's ADA claim may not fall on exhaustion grounds, it is nevertheless fatally deficient.

Plaintiff apparently directs his disability discrimination allegations at all defendants. However, individual defendants may not be held personally liable for alleged violations of the ADA. *See Corr v. MTA Long Island Bus,* 199 F.3d 1321 (2d Cir.1999) (unpublished opinion) (affirming summary judgment against plaintiff and holding that "there is no right of recovery against individual defendants under the ADA"); *Figueroa v. National Audubon Society,* 96–CV–1651, 2000 WL 1170116, *2 (S.D.N.Y. Aug.17, 2000) (granting motion to dismiss because "an individual defendant cannot be held liable under the ADA"); *see also Aratari v. Genesee County Sheriff's Office,* 00–CV–0163, 2000 WL 1047701, *2 (W.D.N.Y. July 25, 2000); *Sutherland v. New York State Department of Law,* 96–CV–6935, 1999 WL 314186, *6–7 (S.D.N.Y. May 19, 1999); *Coddington v. Adelphi Univ.,* No. 98–5146, 45 F.Supp.2d 211 (E.D.N.Y. March 29, 1999); *Sacay v. Research Foundation of the City University,* 44 F.Supp.2d 496, 503 (E.D.N.Y. 1999); *Harrison v. Indosuez,* 6 F.Supp.2d 224, 229 (S.D.N.Y.1998); *Cerrato v. Durham,* 941 F.Supp. 388, 395 (S.D.N.Y.1996); *Yaba v. Cadwalader, Wickersham & Taft,* 931 F.Supp. 271, 274 (S.D.N.Y.1996); *Quiron v. L.N. Violette Co.,* 897 F.Supp. 18, 20 (D.Me.1995) (individual capacity suits are not permitted under Title I).

Indeed, in Parkinson's Northern District action, a decision and order has already been entered which similarly finds that there is no individual liability under the ADA. *See* Decision & Order, Dkt. # 34 in *Parkinson v. New York State Department of Correctional Services,* 98–CV–1788 (N.D.N.Y. March 16, 2000). Judge Kahn, therefore, dismissed plaintiff's ADA claims against Commissioner Goord in his individual capacity. At least with respect to the similar claims raised in Parkinson's Northern District case and the instant case, I consider Judge Kahn's decision binding in this action.

Nor can individuals be named as defendants in ADA suits in their official or representative capacities. *See Hallett v. New York State Department of Correctional Services,* 109 F.Supp.2d 190 (S.D.N.Y. 2000) (granting motion to dismiss ADA claims against individual defendants in both their individual and official capacities); *Candelaria v. Cunningham,* 98–CV–6273, 2000 WL 798636, *2 (S.D.N.Y. June 20, 2000) (holding that individuals may not be held liable under the ADA in either their individual or official capacities); *Harrison,* 6 F.Supp.2d at 229; *Lane v. Maryhaven Center of Hope,* 944 F.Supp. 158, 162–63 (E.D.N.Y.1996). Accordingly, the ADA claims against defendants in their individual and official capacities must be dismissed.

Interestingly, plaintiff conceded in his Northern District action that his suit against defendants in their official capacities was improper, and he therefore discontinued those claims in that action. Just as plaintiff's claims against defendants in their official capacities in the Northern District action were improper, they are equally improper in this action, and must be dismissed. Moreover, considerations of efficiency and the interests of justice compel me to find that all of plaintiff's disability claims related to or stemming from his status as an amputee should be addressed in a single forum. Such a finding also helps to avoid any further duplicative litigation in these matters. Because DOCS is a named defendant in Parkinson's North-

ern District action, and there is no such public entity that has been named in the action before me, it would be to plaintiff's benefit to allow these matters to be pursued solely in the Northern District action. This is so because in the instant case no individuals may remain as defendants against whom plaintiff may have recourse with respect to plaintiff's ADA claims. Plaintiff's relief is limited, therefore, to his claims in his Northern District action against DOCS.[6]

### Conclusion

Plaintiff's motion for summary judgment (Dkt.# 41) is denied, and defendants' cross-motion for summary judgment (Dkt.# 42) is granted. The complaint is dismissed with prejudice.

IT IS SO ORDERED.

---

**6.** Another advantage plaintiff enjoys in his Northern District action is the fact that plaintiff has retained counsel to represent him there, while he is proceeding *pro se* in the instant case.