**Ricky Lee SIROIS, Plaintiff,**

v.

**PRISON HEALTH SERVICES, et al., Defendants.**

**No. CIV. 01–203–B–K.**

United States District Court, D. Maine.

Nov. 21, 2002.

Ricky Lee Sirois, Hallowell, ME, Pro se.

James E. Fortin, Douglas, Denham, Buccina & Ernst, Portland, ME, for Defendants.

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT [1]

KRAVCHUK, United States Magistrate Judge.

Ricky Sirois complains in this 42 U.S.C. § 1983 action that the defendants' provision of dental care to Sirois during his time at Maine correctional facilities was so inadequate that it amounted to cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution. The defendants have filed a motion for summary judgment (Docket No.30) to which Sirois has replied (Docket No. 33). I now **GRANT** the defendants' motion.

### The Summary Judgment Standard and the Factual Record

#### A. Summary Judgment Standard and Pleadings

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the defendants meet this burden, Sirois must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted). I view the record on summary judgment in the light most favorable to Sirois, the nonmovant, drawing all reasonable inferences in his favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000).

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

With respect to the summary judgment record, the defendants have complied with Federal Rule of Civil Procedure 56 and the District of Maine Local Rule of Civil Procedure 56. In addition to their summary judgment memorandum the defendants have filed a statement of material facts (Docket No.31) that contains record citations to the affidavit of Alan Leathers, a licensed dentist who was under contract with Prison Health Services at the time in question and who treated Sirois. (Docket No. 32). Attached to the affidavit are copies of Sirois's treatment and progress notes. These proffers are in conformity with the pleading requirements of subsections (b) and (e) of District of Maine Local Rule of Civil Procedure 56.

However, Sirois, responding *pro se*, has failed to comply with subsections (c) and (e) of the Local Rule, which provides:

(c) Opposing Statement of Material Facts

A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

. . .

(e) Statement of Facts Deemed Admitted Unless Properly Controverted; Specific Record of Citations Required

Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Dist. Me. Loc. R. Civ. P. 56(c),(e). Instead, Sirois has submitted one pleading that contains over five pages of single-spaced text that Sirois indicates were copied from a "Rights of Prisoners" treatise. It sets forth a generalized discussion of the deliberate indifference standard, protocol for medical screening upon entry into a correctional facility, access to necessary treatment, right to ongoing treatment, as well as reference to medical staffing of institutions, medical record keeping, dental care, diet, and mental health. On the sixth and final page of this pleading Sirois does address the Leathers affidavit, not contesting his averments but stating that it proves that Sirois suffered from long toothaches, abscessed teeth, swelling of the gums, periodontal disease, and gingivitis. Sirois also refers to a thick packet of information that he sent to the defendants and the Court in early September 2002, well in advance of the filing of the defendants' motion for summary judgment. Sirois contends that this evidence will further his case if the Court allows this matter to go forward to trial.

By not responding in comport with the rules Sirois has failed to put a single fact offered by the defendants into dispute. Nor has Sirois put before the court adequately supported additional material

facts.[2] The claim that there is evidence in the wings that Sirois wants the opportunity to present to a jury does not excuse Sirois from his summary judgment burden. *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990) ("A genuine issue of material fact does not spring into being simply because a litigant claims that one exists. Neither wishful thinking nor mere promises to produce admissible evidence at trial, nor conclusory responses unsupported by evidence, will serve to defeat a properly focused Rule 56 motion," internal citation and quotation omitted). Sirois's admittedly difficult circumstance as a *pro se* plaintiff does not free Sirois from this pleading burden. *Parkinson v. Goord*, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000) ("[P]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment.").[3]

Even in view of Sirois's failure to meet his nonmovant burden, I can grant the defendants' motion only if, on the record before me, they are entitled to judgment as a matter of law. *See Winters v. FDIC*, 812 F.Supp. 1, 2 (D.Me.1992) ("It is well-established law in this district that Fed. R.Civ.P. 56 requires the Court to examine the merits of a motion for summary judgment even though a nonmoving party fails to object as required by [the] Local Rule[s]."). Thus, I turn to the facts properly before me.

### B. Undisputed Facts Material to Sirois's Deliberate Indifference Claim

Sirois was incarcerated at the Maine Correction Center at Windham in April 1999. That month he was given an initial evaluation by a dental hygienist. On April 29, 1999, he was seen by the prison dentist, named-defendant and the defendants' sole affiant, Doctor Allan Leathers. Sirois told Leathers that he wanted his remaining teeth pulled and wanted to be provided with dentures. Leathers said that he would try to avoid dentures and that Sirois had many teeth remaining that he could keep with proper care.

In 1999 Sirois was provided with dental care on May 6, May 12, August 6, August 13, November 5, December 17, and December 21. During these visits several of Sirois's teeth were extracted and others were filled.[4] In 2000, Sirois was treated by a dentist or a dental hygienist at least eight times.

On February 9, 2001, Doctor Klasson, a named defendant, saw Sirois concerning his dental problems. With respect to this visit Klasson noted: "He wants denture complete (only). Advised him this may not be the best treatment for him. He doesn't care. Will talk with Randi Murphy concerning this issue." Klasson met with Sirois again on February 13, 2001, vis-à-vis which Klasson wrote: "Has never indicated he is having discomfort with his teeth, just that he wants dentures... Explained to [patient] he is not a candidate for den-

---

**2.** It would be inappropriate for me to cull facts from Sirois's September submissions to locate support for facts that I determine are material to Sirois's claim. By not complying with the pleading rule governing opposition to summary judgment Sirois has not given the defendants an opportunity to reply in any meaningful way to an alternative version of the facts. *See* Dist. Me. Loc. R. Civ. P. 56(d).

**3.** Sirois seems to believe that the fact that both he and the defendants requested a jury

trial means that he is entitled to reach trial and that the defendants are estopped from arguing otherwise. This is a misconception of the operative effect of jury demands.

**4.** Paragraph four of the defendants' statement of material facts—stating that a dentist evaluated Sirois at the Maine State Prison in Thomaston in January 2000 and extracted a tooth on February 1, with a follow-up on February 8—has no record reference.

tures. He has fairly good bone support for most of his teeth and further restoration of the decayed teeth would be the best [treatment] at this time. To condemn [patient] to dentures at this age is not adequate [treatment]. Retaining teeth as long as possible is advisable at this time." Sirois was provided with dental care and treatment an additional eight times in 2001 and had several more teeth extracted. Sirois continued to request complete dentures during this time and was advised that this treatment was not warranted. Leathers last saw Sirois on January 11, 2002. He advised Sirois to take better care of his remaining teeth but observed that Sirois did not seem motivated to do so. At this time Leathers made a preliminary impression for partial dentures.

Throughout the course of Sirois's incarceration that is at issue in this suit, Leathers treated him off and on. Leathers did not feel that Sirois's dental problems were interfering with his nutrition, as Sirois gained substantial weight during this time.[5]

### Discussion

State actors are liable by virtue of 42 U.S.C. § 1983 for deprivations of the constitutional rights. *See* 42 U.S.C. § 1983.[6] Sirois's complaint is premised on assertions that the defendants' inadequate treatment of his dental problems caused him unnecessary physical and mental pain. So framed, Sirois's legal claim is that the defendants acted with deliberate indifference to his medical needs as an inmate, indifference amounting to cruel and unusual punishment within the meaning of the Eighth Amendment of the United States Constitution. *See Farmer v. Brennan*, 511

U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (describing Eighth Amendment deliberate indifference standard vis-à-vis prison conditions); *see, e.g. Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (involving allegations of inadequate treatment of a prisoner's back injury over a prolonged period); *Reed v. McBride*, 178 F.3d 849 (7th Cir.1999) (involving denial of food and essential medications); *Watson v. Caton*, 984 F.2d 537 (1st Cir.1993) (involving a denial of treatment for hand injury on the grounds it was injured prior to incarceration). Sirois also alleges that his dental problems and the refusal to provide dentures to him meant he was limited to a soft, sugar and sodium rich, diet that led to unwanted weight gain. Such medical/dietary claims can implicate the Eighth Amendment deliberate indifference prohibitions. *See Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir.2002) ("A prison must provide adequate food and medical care to inmates and the food must be nutritionally adequate," citations and quotations omitted).

I restate my recent encapsulation of the deliberate indifference standard for claims of this genre:

> The United States Supreme Court has framed the broad outlines of the deliberate indifference inquiry in two cases: *Estelle v. Gamble*, 429 U.S. 97, 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The *Estelle* Court identified in the Eighth Amendment protection the "government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103, 97 S.Ct.

5. Sirois asserts in his response that his dental woes meant that he could only eat soft food, most of which were sugar-based. He also ate "Ramen" soups which contain a lot of sodium. These types of food made him fat.

6. The defendants have not raised any challenge to the characterization of them as state actors. *See Flint ex rel. Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351–52 (6th Cir.2001).

285. It observed: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id. See also Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) ("[T]he substantive limits on state action set by the Eighth Amendment," when it "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs" including food and medical care).

In *Farmer* the Court more precisely articulated the standard a plaintiff must meet to hold a prison official liable for Eighth Amendment claims of this ilk. It identified two prongs. First, the deprivation alleged must be "objectively 'sufficiently serious.'" 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). I read *Farmer* to include within this first prong a consideration not only of the extent of illness, injury, or pain but also of what steps were or were not taken by the defendant without addressing motivations. [*Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir.2002) ]("The deprivation suffered by the prisoner must be objectively sufficiently serious; that is, it must result *in the denial* of the minimal civilized measure of life's necessities," emphasis added). Second, under *Farmer,* the defendant must have a culpable state of mind, which means that the defendant was deliberate in his indifference to the inmate's health or safety. *Id.*

*Dellairo v. Garland,* 222 F.Supp 2d 86, 90–91 (D.Me.2002).

The facts laid forth above demonstrate that Sirois had very serious dental problems, warranting the extraction of the ma-

jority of his teeth over the course of his incarceration. However, the summary judgment record also documents the steps that the defendants took in addressing Sirois's dental problems and complaints. Between April 1999 and January 2002 he was seen frequently by the dental staff (certainly more often than the average dental patient in the non-inmate population). When necessary teeth were filled or extracted. Sirois wanted full dentures when he first was seen in April 1999, and persisted in requesting this treatment throughout his incarceration. The dental staff did not think full dentures were the proper course of treatment. They retained hope of saving some of his teeth and believed that it would be a burden to Sirois to have full dentures at such a young age. By January 2002, apparently the end of the time in which these defendants were responsible for Sirois's medical care, steps were taken to fit Sirois for partial dentures. The fact before me with respect to the dietary and weight implications of this approach to Sirois's dental care is that Leathers did not feel that Sirois's dental problems were interfering with his nutrition based on his observation that Sirois gained substantial weight during this time.

■ Drawing all reasonable inferences in favor of Sirois but constrained by the facts properly before me, I conclude that objectively viewed Sirois was not deprived of proper medical attention in the constitutional sense and that the defendants are entitled to summary judgment on the first prong of the standard articulated in *Farmer.*[7] This is no more than a dispute about the best course of treatment and such disputes are not actionable under 42 U.S.C. § 1983. *See Estelle,* 429 U.S. at 107, 97 S.Ct. 285 ("[T]he question whether

7. There is also nothing in this record that would support a conclusion that the subjec-

tive element of *Farmer* is met.

an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court."). In the absence of a valid Constitutional claim, a sympathy for Sirois's dental and dietary plight is not a sufficient basis for allowing him to air his grievances to a jury; the Supreme Court has cautioned that federal courts should not be tempted to micromanage inmate medical care or diet. *See Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ("[Two] principles ... necessarily frame our analysis of prisoners' constitutional claims. The first of these principles is that federal courts must take cognizance of the valid constitutional claims of prison inmates. [The] second principle identified in *Martinez,* however, is the recognition that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform,'" quoting *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)).

### Conclusion

For the reasons above I **GRANT** summary judgment to defendants on Sirois's complaint.